NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SICILY BY CAR S.p.A., | |
| Plaintiff, | Civil Action No. 14-6113 (SRC) |
| v. | OPINION |
| HERTZ GLOBAL HOLDINGS, INC. and HERTZ CORPORATION, | |
| Defendants. | |

**CHESLER**, District Judge

      This matter comes before the Court upon the motion filed by Defendants Hertz Global Holdings, Inc. and Hertz Corporation to compel arbitration pursuant to 9 U.S.C. § 206. In the alternative, Defendants move to stay this action or to dismiss the Complaint. Plaintiff Sicily by Car S.p.A. ("Plaintiff" or "SBC") has opposed the motion. The Court has considered the papers filed by the parties and proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Court will grant Defendants' motion to compel arbitration.

**I.     BACKGROUND**

      Plaintiff SBC, an Italian corporation engaged in the car rental business in Italy, entered into a License Agreement with Dollar Rent A Car, Inc. and Thrifty Rent-A-Car System, Inc. (collectively, "Dollar Thrifty") on February 5, 2012. According to the Complaint, the License

Agreement grants SBC an exclusive ten-year license for car rental reservations in Italy made through Dollar Thrifty's reservation systems. Dollar Thrifty was later acquired by Defendant Hertz Global Holdings ("HGH") in or about November 2012. Defendant Hertz Corp. is HGH's operating company, and they are both Delaware corporations headquartered in Park Ridge, New Jersey. The Defendants will be both be referred to collectively as "Hertz."

In February 2013, after it had been acquired by Hertz, Dollar Thrifty exercised its right under the License Agreement to terminate the contract upon issuance of two years' written notice to SBC. The Complaint alleges that Dollar Thrifty gave notice of termination "at Hertz's direction." (Compl., ¶ 15.) It further alleges that Hertz contacted SBC to pressure SBC to accelerate the termination to become effective immediately, rather than in two years. SBC alleges that, when it refused, Hertz took retaliatory actions. According to the Complaint, Hertz diverted to itself reservations made on Dollar Thrifty's websites and reservation systems that should have gone to SBC under the License Agreement. The Complaint also alleges that, pursuant to a contract between Hertz and Ryan Air, car rental reservations offered to Ryan Air customers were to make available the option of renting through Thrifty, but Hertz intentionally did not include Thrifty as an option for car reservations in Italy. The Complaint thus alleges that Hertz's action was designed to "interfere with SBC's contracted-for rights and benefits under its exclusive license agreement with Dollar Thrifty." (Id., ¶ 27.)

The Complaint asserts three causes of action against Hertz: tortious interference with contract; misrepresentation; and unjust enrichment. It also includes one count requesting punitive damages. Dollar Thrifty is not named as a defendant.

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).

## II. DISCUSSION

Hertz brings this motion to compel arbitration pursuant to 9 U.S.C. § 206, a provision of the statute enforcing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which applies to arbitration agreements arising out of a commercial relationship between a foreign corporation and a citizen on the United States. 9 U.S.C. § 202. Section 206 provides that a court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. Hertz seeks to avail itself of the agreement to arbitrate set forth in the License Agreement, a contract entered into by Plaintiff SBC and Dollar Thrifty. In other words, Hertz, a non-signatory to the License Agreement, seeks to compel arbitration of its dispute with SBC pursuant to that contract's arbitration provision.

Before turning to the question of whether this case presents circumstances in which a non-signatory to a contract may enforce a contractual arbitration provision against a signatory, the Court must first address Hertz's argument that the very question of arbitrability should be decided by an arbitrator and not the Court. "It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) (citations omitted); see also Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 228 (3d Cir. 2012) (holding that questions of arbitrability are presumed to be for judicial determination). In recognition of "the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration," the Supreme Court has held that the issue of arbitrability should be submitted to an arbitrator only where the parties have "clearly and unmistakably" agreed to do so. AT&T Tech.,

3

Inc. v. Comm'ns Workers of Am., 475 U.S. 643, 648-49 (1986).  Hertz has not come forward with such a clear and unmistakable agreement.  It argues that the License Agreement incorporates, by specific reference, the International Arbitration Rules of the American Arbitration Association ("AAA"), which in turn state that the "arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement(s)."  This language, by itself, would appear to support Hertz's position that this case fits within the exception to the rule that courts decide whether a matter is arbitrable.  Indeed, Hertz points out that other courts, including those of this district, have found the above-quoted rule to confer authority upon the arbitrator to decide arbitrability, pursuant to the parties' agreement incorporating AAA rules.  See, e.g., Bapu Corp. v. Choice Hotels Int'l, Inc., No. 07-5938 (WJM), 2008 WL 4192056 at*4 (D.N.J. Sept. 8, 2008) (holding that the parties' agreement to arbitrate under the AAA rules includes an agreements to submit the question of arbitrability to the arbitrator); Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005) (holding that "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.").

  The problem with Hertz's argument is that there has been no agreement between Hertz and SBC at all, much less a clear and unmistakable agreement to submit the question of arbitrability to an arbitrator.  The argument presumes that Hertz can avail itself of the rights and obligations of the License Agreement insofar as they concern the arbitration of disputes, but whether and under what circumstances non-signatory Hertz may do so is precisely the question the Court must address in this motion.  Simply put, Hertz has not presented clear and unmistakable evidence that it contracted with SBC to grant an arbitrator the authority to decide

4

whether this dispute must be arbitrated. The Court, therefore, proceeds to determine whether Hertz can compel SBC to arbitrate this matter.

A motion to compel arbitration is governed by the Federal Arbitration Act ("FAA"), which "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009). The Third Circuit has held that motions to compel arbitration should be analyzed under a Rule 12(b)(6) standard when arbitrability is apparent on the face of the complaint and/or documents relied upon in the complaint. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773-74 (3d Cir. 2013). Where the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record. Id. at 774. In such circumstances, the motion should be adjudicated under the Rule 56 standard for summary judgment. Id. Here, Hertz moves to compel arbitration based on allegations made in the Complaint on the License Agreement expressly referenced in the Complaint. While Plaintiff SBC has argued that the arbitration provision in the License Agreement cannot be enforced by Hertz because it is not a party to the contract, SBC does not contend that it did not intend to be bound by the contract or presented evidence to that effect. This motion presents no need to explore factual issues or matters outside the Complaint, and thus the Court will apply a Rule 12(b)(6) standard of analysis. To meet that standard on this motion, the complaint must show, through the facts alleged, that the movant is entitled to the relief sought. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

It is well established that arbitration is "strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." Bel-Ray Co., Inc. v. Chemrite Ltd., 181 F.3d 435, 444 (3d Cir. 2013) (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect."). Indeed, the FAA requires that, before a court may order the parties to submit their dispute to arbitration, it must find (1) that a valid agreement to arbitrate exists and (2) that the specific dispute falls within the substantive scope of the agreement. 9 U.S.C. § 4; see also Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (setting forth two-step inquiry required on a motion to compel arbitration). The FAA sets a strong federal policy in favor of compelling arbitration, but "this presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Kirleis v. Dickie, McCarney & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009).

The Court begins, then, with a review of the pertinent portions of the contract at issue in this case. The License Agreement is an international commercial agreement between Plaintiff SBC and Dollar Thrifty. It contains a mandatory mediation provision, which provides that the "parties agree to submit any claim, controversy or dispute arising out of or relating to this Agreement (and attachments) or the relationship created by this Agreement to nonbinding mediation prior to bringing such claim, controversy or dispute in an arbitral tribunal, court or any other tribunal." (License Agreement Art. 607(C)). In the event the mediation is unsuccessful, the License Agreement states that "any such controversy shall be finally settled by arbitration in

accordance with the terms hereof." (Id., Art. 607(D)).  The arbitration may be initiated by either party to the License Agreement and must be conducted in Tulsa, Oklahoma.

SBC does not challenge the validity of the License Agreement, or, specifically, that it agreed to arbitrate disputes with Dollar Thrifty.  There is also no dispute that the party seeking to compel arbitration, Defendant Hertz, is not a signatory to the contract.  Hertz, nevertheless, seeks to enforce the arbitration provision by invoking the principle of equitable estoppel.[1]

The Supreme Court has held that arbitration agreements may, in certain situations, be enforced by non-parties to the contract through traditional state law principles.  Arthur Andersen, LLP v. Carlisle, 556 U.S. 624, 631 (2009).  These principles include "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." Id.  To determine whether non-signatory Hertz may enforce the arbitration agreement through equitable estoppel, the Court must look to the applicable state law on this issue.

The parties disagree on which state's law applies.  SBC maintains that the law of the forum state, New Jersey, must apply, whereas Hertz relies on the License Agreement's choice of law provision to argue that Oklahoma law governs the question of compelling arbitration through equitable estoppel.  Despite the parties' disagreement, the Court has not in fact been presented with a choice of law issue.  The threshold question that must be resolved to adjudicate Hertz's motion to compel arbitration is whether Hertz is entitled to enforce any part of the License Agreement, and specifically its arbitration provision, without having entered into that contract.

---

[1] In its moving brief, Hertz states in a footnote that, alternatively, it may enforce the arbitration provision based on a theory of agency, because License Agreement signatory Dollar Thrifty is its wholly-owned subsidiary.  The argument is cursory and does not address the fact that Hertz acquired Dollar Thrifty after the License Agreement was executed. The argument has not been developed beyond the footnote, and therefore, the Court does not consider Hertz's agency theory to compel arbitration.

7

Hertz tries to bootstrap the License Agreement's choice of law provision into the analysis, but the Court has no basis for applying provisions of the License Agreement without first deciding that a non-signatory has any rights under that contract. Indeed, Hertz's rights, if any, to compel arbitration do not arise under the License Agreement itself, but, as it has argued, state law principles of equity. As this Court has subject matter jurisdiction over this action under diversity jurisdiction, it will apply New Jersey's substantive law regarding enforcement of arbitration agreements by non-signatories. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

New Jersey law recognizes the use of equitable estoppel by or against non-parties to a contract to compel arbitration. Hirsch v. Amper Fin. Svcs., LLC, 215 N.J. 174, 188-89 (2013). The doctrine may be "invoked in the interests of justice, morality and common fairness." Id. at 189 (quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003)). To establish that equitable estoppel applies, the party invoking it must demonstrate that the opposing party "engaged in conduct, either intentionally or under circumstances that induced reliance, and that [the moving party] acted or changed [its] position to [its] detriment." Id. (quoting Knorr, 179 N.J. at 178). In Hirsch, the New Jersey Supreme Court stressed that the doctrine's purpose is to prevent the injustice caused by one party's repudiation of a course of conduct on which another party has detrimentally relied. Id. 193-94. As such, it held that equitable estoppel may be applied to compel arbitration only where there has been a showing of detrimental reliance.[2] Id. at 193.

---

[2] As SBC has pointed out, the Supreme Court's opinion in Hirsch is also noteworthy on the issue of compelling arbitration through equitable estoppel because it expressly rejected "intertwinement" between the parties and claims as a basis for finding a party estopped from avoiding a contract's arbitration provision. Hirsch, 215 N.J. at 193. The intertwinement theory had previously been applied by the New Jersey Superior Court's Appellate Division in EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc., 410 N.J. Super. 453 (App. Div. 2009). The Hirsch Court, however, ruled that "[e]stoppel cannot be applied solely because the parties and

Hertz has demonstrated that SBC took deliberate action with regard to placing the License Agreement squarely at issue in the claims it has asserted against Hertz in this lawsuit. SBC alleges that Hertz engaged in misconduct which interfered with SBC's rights and benefits under the License Agreement. This choice by SBC forces Hertz to defend against claims which essentially arise out of the License Agreement, notwithstanding their presentation as tort theories of relief against a non-signatory to the contract. Indeed, the Complaint alleges that Dollar Thrifty terminated the License Agreement at the direction of Hertz, which, by that time, had become Dollar Thrifty's parent company. It goes on to allege that Hertz took various actions to deprive SBC of the exclusive license to Dollar Thrifty car rentals in Italy, an alleged loss which would not exist but for SBC's entitlement to the business by virtue of the License Agreement. As a Defendant to this suit, Hertz must take action based on SBC's decision to assert claims that directly relate to the License Agreement, yet, to its detriment, proceed in a manner which allows SBC to avoid the License Agreement's alternative dispute resolution procedure. To allow SBC to assert claims which embrace certain provisions of the License Agreement but repudiate others would impose an unfairness against Hertz that the doctrine of equitable estoppel is precisely tailored to address. The Court finds that, pursuant to Hirsch, Hertz has demonstrated detrimental reliance and established that, as a non-signatory, it is entitled to enforce the License Agreement's arbitration provision as a matter of equitable estoppel.

The Court therefore turns to the second prong of the inquiry, which requires it to determine whether the dispute between SBC and Hertz falls within the scope of the arbitration agreement. The License Agreement's provision on arbitration is broad, stating that "any claim,

---

claims are intertwined, and, to the extent that *EPIX Holdings* suggests otherwise in its rationale, it extends equitable estoppel beyond its proper scope." Id.

controversy or dispute *arising out of or relating to* this Agreement (and attachments) or the relationship created by this Agreement" must be submitted to arbitration, in the event mandatory mediation fails to resolve the dispute.  (License Agreement, Art. 607(C)-(D), emphasis added.) For the reasons discussed above in the Court's analysis of detrimental reliance, SBC's claims of tortious interference, misrepresentation and unjust enrichment are premised on allegations that Hertz misappropriated and diverted business opportunities and, specifically, Italian car rentals made through Dollar Thrifty, to which SBC was entitled under the License Agreement.  The dispute before the Court is clearly one "arising out of or relating to [the] Agreement."  It is well-settled that "'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT & T Tech., Inc., 475 U.S. at 650 (quoting Warrior & Gulf Nav. Co., 363 U.S. at 582-83 (1960)).

  Hertz, in sum, has established that, as a matter of equitable estoppel, it is entitled to enforce the License Agreement's indisputably valid mediation and arbitration provision and, further, that this dispute is covered by the provision.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Hertz's motion to compel SBC to submit this matter to the alternative dispute resolution procedure set forth in the License Agreement, requiring mediation followed, if necessary, by arbitration. An appropriate Order with be filed together with this Opinion.

  s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: May 20, 2015